# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-66 c/w
## 10-67, 09-1169


**ANDRE ALEXANDER, ET AL.**

**VERSUS**

**THE ESTATE OF MAURICE B. MCNEAL, ET AL.**

**********
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2008-1592-A
HONORABLE MARK JEANSONNE, PRESIDING
**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell and J. David Painter, Judges.

**AFFIRMED.**


**Dale G. Cox**
**Bradley, Murchison, Kelly & Shea, LLC**
**401 Edwards Street, 10th Floor**
**Shreveport, LA 71101**
**(318) 227-1131**
**COUNSEL FOR PLAINTIFFS-APPELLEES:**
    **Althea Dupar, Jared Troy Dupar and Paige Nicole Dupar**


**Cory P. Roy**
**Beau R. Layfield**
**107 North Washington Street**
**P.O. Box 544**
**Marksville, LA 71351**
**(318) 240-7800**
**COUNSEL FOR PLAINTIFFS-APPELLEES:**
    **Andre Alexander and Phaetra Moore**

**Ronald E. Raney**
**Lunn, Irion, Salley, Carlisle & Gardner**
**P.O. Box 1534**
**Shreveport, LA 71165-1534**
**(318) 222-0665**
**COUNSEL FOR DEFENDANT-APPELLANT:**
      **Republic Vanguard Ins. Co.**

**COOKS, Judge.**

On December 7, 2007, a two truck head-on collision occurred in Avoyelles Parish, Louisiana. Both drivers were killed. Maurice McNeal drove a tractor owned by Tyler Timber, Inc. and insured by Praetorian Specialty Insurance Company (Praetorian). Marvin Dupar drove the other vehicle, a truck, which he owned. A tthe time of the accident, Mr. Dupar had a policy of automobile liability insurance with Republic Vanguard Insurance Company.

Marvin Dupar was survived by his wife, Althea Dupar, and two children from their marriage. Mr. Dupar was also survived by two illegitimate children, Andre Alexander and Phaetra Moore.

As a result of the accident, separate lawsuits were filed by Ms. Dupar and her children and by Alexander and Moore seeking wrongful death and survival damages. In both of those lawsuits, the Plaintiffs, the wife and children, both legitimate and illegitimate, of Marvin Dupar alleged the negligence of Maurice McNeal was the cause of the accident. It was also alleged that at the time of the accident, Praetorian had in force and effect a policy of automobile insurance that provided liability insurance coverage for Mr. McNeal's negligence. The two suits were consolidated for trial.

The record established Mr. Dupar signed two UM rejection forms concerning his Republic policy, one on April 30, 2007, and then another on July 31, 2007. Neither form contained a policy number, even though both forms had a blank for a policy number. The parties disagreed on whether there was a policy number in effect on April 30, 2007. It was undisputed that there was a policy number in effect at the time of the July 31, 2007 waiver.

Republic filed a motion for partial summary judgment, contending there was

no policy number in effect on April 30, 2007; and thus, that waiver was not required to contain a policy number. Since the April 30, 2007 form is valid, it argued the second waiver form was legally irrelevant. The Dupars filed their own motion for partial summary judgment on the grounds that neither selection form contained a policy number as required by *Duncan v. USAA Ins. Co.*, 06-363 (La.11/29/06), 950 So.2d 544, thus neither waiver was valid. In the alternative, if it is determined the first waiver did not require a policy number, the Dupars argue the result is the same, because the second waiver superceded the first waiver, and since the second one did not contain a policy number, it too was not valid.

After a hearing on both motions on July 13, 2009, the trial court granted the Dupars' motion for partial summary judgment and denied Republic's motion. The trial court found the July 31, 2007 election form replaced or superceded the April 30, 2007 form, and because there was no policy number on the July 31, 2007 form, that waiver was invalid. The trial court signed two judgments to reflect its rulings.

Republic has appealed both judgments, asserting the April 30, 2007 selection form was valid in all particulars, and the mere fact that a subsequent UM rejection form was issued for the same policy does not invalidate the initial rejection form.

## I. *Standard of Review.*

Appellate courts review motions for summary judgments *de novo* to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). The mover bears the initial burden of proof to

show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2).

## II. Analysis.

Louisiana Revised Statutes 22:1295(1)(a)(i) provides that no policy of automobile liability insurance "shall be delivered or issued for delivery in this state" without uninsured motorist coverage; however, UM coverage "is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item(1)(a)(ii) of this Section." Subsection (a)(ii) of La.R.S. 22:1295(1)(a) provides that the "rejection, selection of lower limits, or selection of economic-only [UM] coverage shall be made only on a form prescribed by the commissioner of insurance" and that "[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected [UM] coverage."

In *Duncan*, 950 So.2d at 547, the supreme court observed that strong public policy is embodied in the UM coverage statute and that the statute is to be liberally construed, which "requires the statutory exceptions to coverage be interpreted strictly." For these reasons, "the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Id*. Thereafter, the supreme court identified six tasks which must be performed to complete the UM selection form prescribed by the Commissioner of Insurance in order to reject UM coverage:

> [T]he prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Id*. at 551. Failure to comply with *one* of these six tasks results in an invalid

rejection of UM coverage. It was undisputed that the second waiver did not contain a policy number, even though a policy number was in existence. Therefore, it did not comply with the mandates of *Duncan* and did not validly waive UM coverage.

In this case, after having Mr. Dupar sign a UM waiver form on April 30, 2007, Republic presented another waiver form to Mr. Dupar, dated July 31, 2007, and required him to sign the form. Now it argues, rather conveniently, that this subsequent document which they required Mr. Dupar to sign is "legally irrelevant" because the first form is still valid. At the hearing on the motion for summary judgment, the trial court specifically asked counsel for Republic what were the differences in the second rejection form, and was told "none." The trial court then asked counsel for Republic, if there were no differences in the forms, why was it presented to Mr. Dupar? Counsel for Republic replied "it's my understanding the insurance company simply [is] updating its forms like it does." The trial court then responded that the "the language is different . . . And so I mean if it doesn't supercede the second one, if it doesn't supercede the first, then it gives the insurer two from which to benefit from the language possibly." Counsel for Republic maintained the differences in the two forms were not substantive, and likened the signing of the second UM rejection form to signing a policy renewal. The trial court was not persuaded, and set forth the following reasons in open court for finding the second policy superceded the first policy:

> I can't shake what I believe there was some pertinent issue to the insured which compelled the insurer to require the insured to sign a subsequent UM rejection in July of 07. And despite the language in *McElroy* they even use a word that I'd earlier before I had read the case. Of course that was a renewal policy and there is strong statutory language indicating that regarding renewal the initial UM rejection stands.

> But there's a difference here where the drafter of the contract, the drafter of the policy, the insurer compels for whatever reason, the

insured to come back in. That second document has to stand for something, it has to mean something. Whatever the issue is, the insurer wanted to have a second subsequent rejection form signed.

It's the Court's opinion that based on everything I have seen, it would be a superseding document in this case. It is distinguishable from *McElroy* although some of the general language certainly could be applied here. It's just something that I can't shake in this particular case. I believe that the second UM Rejection Form is superseding at that time, again it does appear obvious that the policy number existed. They compelled him to come in and sign it, obviously they wanted the second form to have the full force of law, if necessary, although the exact reason is not clear. Obviously the insurer hypothetically would be called on and needed it for some type of defense, they would use it, that would be the rejection dated July of '07 and therefore it's the Court's opinion that it should have had the policy number on it, as the policy number did exist at that time. I'll grant the summary judgment for those reasons.

We agree with the trial court's well-reasoned judgment. The insurer cannot pick and choose which one of the rejection forms to enforce and required Mr. Dupar to sign for both. There are legal consequences flowing rom signed documents; and certainly Republic, as the drafter and presenter of the July 31, 2007 waiver form, should be held to those consequences.

We also agree with the trial court that *McElroy v. Continental Cas. Co.*, 43,868 (La.App. 2 Cir. 6/24/09), 15 So.3d 377, is factually distinguishable from the present case. In *McElroy*, the court specifically noted it involved a policy renewal, and thus since it involved a renewal the initial UM rejection stood. There is nothing in the record to indicate Mr. Dupar was called in to sign a renewal.

Accordingly, we find the trial court correctly found the July 31, 2007 rejection form superceded the April 30, 2007 form. Since the July 31, 2007, form did not contain a policy number, which was in existence at that time, it is legally insufficient under *Duncan* to waive UM coverage. The trial court did not err in denying Republic's motion for partial summary judgment and in granting Plaintiffs' partial motion for summary judgment. All costs of this appeal are assessed to appellant,

Republic Vanguard Insurance Company.

**AFFIRMED.**